DELAWARE TRUST COMPANY, Trustee under the Will of ED-WARD G. BRADFORD, JR., Deceased, a corporation of the State of Delaware,

*vs.*

HELEN S. BRADFORD and THE PRESIDENT AND FELLOWS OF YALE COLLEGE, a corporation of the State of Connecticut.

*New Castle, May 21, 1948.*

278

*Daniel F. Wolcott* (of Southerland, Berl & Potter), for plaintiff.

SEITZ, Vice-Chancellor. The court is required to instruct the trustee as to the method of treatment and dis-

position of the net proceeds from the sale of an unproductive trust asset.

Edward G. Bradford, Jr., died December 3, 1927. Under the third item of his will he left certain property to the plaintiff, Delaware Trust Company, in trust "to keep the same invested in good securities, and * * * to pay over the net income" to his wife for life. Under the same item, his wife was given a power of appointment either by deed or will over the trust property and in the event of her failure to exercise the power, or at the expiration of the term of appointment, the trust corpus was to be given to Yale College, a Connecticut corporation, upon certain trusts. By his will, the testator authorized the trustee to sell any of his real estate at either public or private sale.

On June 10, 1927, the testator purchased a piece of vacant land for the sum of $5,000. Upon his death, this property—then valued at $9,800—became a part of the quoted testamentary trust, and was held as a trust asset from the testator's death on December 3, 1927 to the date of sale on September 24, 1947. During this period of 19 years, 9 months and 21 days the land was completely unproductive. In fact, it was an expense to the estate in that during this period charges amounting to $403.98 were paid thereon from the trust income.

When plaintiff as trustee sold the land on September 24, 1947, he realized, after deducting real estate commissions, the sum of $18,997.63. This represented a taxable capital gain of $4,598.82 on this transaction. The trust also had an additional capital gain from another transaction in 1947 which resulted in total capital gains for 1947 on all trust assets of $4,715.57. The trust incurred capital losses from the sale of other assets in previous years amounting to $3,777.56. These earlier capital losses were set off against the capital gains with the result that the net capital gain for 1947 amounted to only $938.01. The federal capital gains tax on this sum amounted to $159.22.

Since December 3, 1927, the defendant Helen S. Bradford, as the income beneficiary for life, has acquiesced in the retention of the unproductive land by the plaintiff as trustee. In fact, she requested plaintiff not to sell the land, it being her belief that its value would in time be greatly enhanced. Plaintiff as trustee reached the same conclusion in the exercise of its independent judgment.

From 1939 to 1947, the average net annual income of the trust created by the testator and paid to the life income beneficiary amounted to $1,708.96. Plaintiff has determined from a study of its various trust accounts that a reasonable current rate of return on trust investments with diversified holdings is 3.7%.

Plaintiff has asked for the following instructions:

1. Will the fact that the life income beneficiary requested the plaintiff trustee to hold the land in question operate to prevent an apportionment between principal and income of the net proceeds of sale?

2. Is the sum of $403.98, being the amount expended out of income as carrying charges on said land, properly chargeable against the proceeds of sale to reimburse the income beneficiary for lost income occasioned by the retention of the unproductive trust asset?

3. Plaintiff is uncertain, if apportionment is to be made, whether the net proceeds of sale are to be treated as containing principal and income on that principal for the period during which the property was held in the trust, and whether the net proceeds of sale are, therefore, to be apportioned by ascertaining the sum which with interest thereon at the current rate of return on trust investments would equal the net proceeds; the sum so ascertained being treated as principal and the balance as income.

4. If apportionment is to be made, should the net proceeds of sale be determined by deducting the tax due on the capital gain realized from the sale?

5.   If apportionment is to be made, plaintiff is uncertain what rate of return on trust investments is to be used.

The life income beneficiary and the President and Fellows of Yale College, a Connecticut corporation, were named as defendants.   Neither defendant appeared and a default judgment has been taken against them.   Thereafter, the court heard testimony on behalf of the plaintiff with respect to the facts of the case.

Where a trust is created for successive beneficiaries, and where the trust estate includes unproductive property, the trustee is ordinarily under a duty to sell the property within a reasonable time and to invest the proceeds in productive property.   See 2 *Scott on Trusts*, § 240.   The trustee here held the unproductive property for a great many years, and it is apparent from the substantial price at which it was ultimately sold that the decision of the trustee to hold the unproductive property and the request of the income beneficiary that it hold such property were fully vindicated.

Whether or not the net proceeds from the sale of unproductive trust property will be apportioned between the income beneficiary and the remainderman is one of intent. See 2 *Scott on Trusts*, § 241.2.   If it is manifest that the testator intended the entire principal of the trust to constitute a fund, the income of which is to be for the benefit of the life beneficiary, then a duty is imposed upon the trustee to sell the unproductive property at a convenient time and to apportion the net proceeds between principal and income.   However, if the trust instrument makes clear that the testator intended to deprive the life beneficiary of income from that portion of the trust represented by unproductive property, there can be no question of apportionment—it is all principal.

Generally the courts will infer that the testator intended the life beneficiary to have the benefit of income from all property in the trust unless the terms of the trust indicate otherwise.   See 1 *Restatement of Trusts*, § 241.   Con-

sequently, where the terms of the trust are silent, the courts will direct the trustee to apportion the net proceeds from the sale of an unproductive asset between capital and income. The creator of the trust here involved showed no intent to preclude the life income beneficiary from having the benefit of income from all the trust assets. Indeed, we may infer to the contrary since the life income beneficiary was the testator's wife. Moreover, the will directed the trustee to keep the trust property invested in good securities.

I conclude that the testator intended the income beneficiary to have the benefit of the income from all the trust assets with the consequence that the net proceeds of sale should be apportioned. The fact that the income beneficiary requested the trustee to hold the unproductive asset is not important here since the trustee reached the same conclusion in the exercise of its independent judgment.

It next becomes pertinent to determine what rule of apportionment should apply here. In 1 *Restatement of Trusts*, § 241, the rule is set forth as follows:

"(1)  Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary is property which the trustee is under a duty to sell, and which produces no income or an income substantially less than the current rate of return on trust investments, or which is wasting property or produces an income substantially more than the current rate of return on trust investments, and the trustee does not immediately sell the property, the trustee should make an apportionment of the proceeds of the sale when made, as stated in Subsection (2).

"(2)  The net proceeds received from the sale of the property are apportioned by ascertaining the sum which with interest thereon at the current rate of return on trust investments from the day when the duty to sell arose to the day of the sale would equal the net proceeds; and the sum so ascertained is to be treated as principal, and the residue of the net proceeds as income.

"(3)  The net proceeds are determined by adding to the net sale price the net income received or deducting therefrom the net loss incurred in carrying the property prior to the sale."

The rule quoted from the *Restatement of Trusts* has been generally followed elsewhere and will be applied here since it results in a realistic and satisfactory adjustment of adverse interests.

Where, as here, the particular trust asset has been unproductive from the very beginning of the trust, the question arises—for purposes of applying the apportionment formula —whether the "duty to sell" commences at the inception of the trust, or at some reasonable time thereafter. While a difference of opinion apparently exists, the view that the "duty to sell" arises at the inception of the trust is supported by substantial authority. See *Edwards v. Edwards*, 183 *Mass*. 581, 67 *N.E.* 658; 2 *Scott on Trusts*, § 241.1. See 1 *Restatement of Trusts*, § 241, *Comments a and b*.

Although the point for decision was not the same, the language of the court in *Equitable Trust Company v. Kent, et al.*, 11 *Del. Ch.* 334, 101 *A.* 875, would seem to support the view that where an asset is unproductive from the very inception of a trust, in applying the apportionment formula, the date the trust comes into being should be employed rather than some subsequent date. That view, which I adopt, would seem to make real sense here when the manifest purpose of the income provision of the trust is considered, to wit, to provide income to the testator's wife.

The current rate of return on diversified trust investments is shown by this trustee to be 3.7%. This rate of return will be accepted and applied in this case.

The trustee desires to be instructed as to whether in determining the net proceeds available for apportionment, the carrying charges paid out of income, as well as the capital gains tax resulting from the sale of the unproductive property, should first be deducted from the proceeds of sale.

The cost of carrying unproductive property is payable out of principal rather than income in the absence of any indication that the testator demonstrated a different in-

tention. See 2 *Scott on Trusts,* § 233.4. The payment of real estate taxes and insurance are such costs, and in this case should have been paid out of principal rather than income. The trustee will, therefore, pay the income beneficiary from principal the amount of income which it used to pay the taxes and insurance on the unproductive trust asset. My subsequent discussion will be premised on the assumption that such sums have been paid out of the principal.

It seems to be well settled that where the cost of retaining an unproductive asset has been paid out of principal, the amount so paid should first be deducted from the proceeds of sale before determining the amount to be apportioned between principal and income. This constitutes a fair adjustment between the rights of the income beneficiary and the remainderman. See 1 *Restatement of Trusts,* § 241, *Comments d and e;* 2 *Scott on Trust,* § 241.1. The amount of taxes and insurance paid on the unproductive property should, therefore, be deducted from the proceeds of sale in order to determine the net proceeds subject to apportionment.

The method of treating the tax on the capital gain which resulted from the sale of the unproductive real estate presents a novel and difficult problem. It is especially involved here because of the use of capital losses on the sale of other trust assets from previous years to offset the capital gains resulting from the sale of the unproductive asset, as well as other assets, in 1947.

In keeping with the equity which forms the basis of the doctrine of apportionment, it seems to me that the capital gains tax attributable to the sale of the unproductive real estate should be deducted from the proceeds of sale in order to determine the net proceeds available for apportionment. This correlates the burdens and the benefits. The total tax for 1947, the year when the unproductive asset was sold, was based upon an excess of capital gains for 1947 over capital losses from previous years, and amounted to $159.22.

It would seem fair to attribute to the sale of the unproductive real estate that proportion of the tax which the gain on the sale of the unproductive property ($4,598.82) bears to the total capital gains ($4,715.57) for 1947. Accordingly, the amount of tax deductible is $4,598.82/4,715.57 of $159.22, or $155.28.

The trustee should, therefore, deduct the sum of $155.28 from the proceeds of sale before applying the apportionment formula. When this is done, the net proceeds of sale amount to $18,842.35. The interplay of the capital gain and loss provisions of the federal tax laws complicate the application of the apportionment formula. I have decided that the capital losses should be recognized in this situation in order to determine the net proceeds available for apportionment. By so doing, however, it is not to be understood that I am suggesting how this item should be treated in the innumerable variations of this problem. Those situations, to the extent that they are not fairly within the spirit of this decision, must await future determination.

I conclude that the trustee should apportion the net proceeds of the sale of the unproductive real estate by ascertaining the sum which with interest thereon at the current rate of return on trust investments (3.7%) from the day when the trust was created, i. e., the date of the testator's death (December 3, 1927), to the day of the sale (September 24, 1947) would equal the net proceeds ($18,438.37). When this is done, we find that the trustee should treat the sum of $10,644.30 as trust principal and the balance, being $7,794.07, as income.

An order accordingly will be advised.