## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BARRY E. PEPPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2022-0639-LM |
| | ) | |
| LAURIE L. DUNTON, | ) | |
| | ) | |
| Defendant. | ) | |

## POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Dated: November 4, 2024

1.     This final report makes post-trial findings of fact and reaches conclusions of law concerning the Second Amended Trust of Charles B. Pepper ("Decedent"), the Trustee, and Liquidation of the Trust.

2.     Plaintiff, Barry Pepper, filed this Complaint on July 22, 2022, for breach of fiduciary obligations regarding the Irrevocable Trust of Charles B. Pepper (the "Trust"), his father.[1]  Defendant is Laurie L. Dunton, Plaintiff's sister, the other beneficiary of the Trust, and the current Trustee.[2]

3.     Plaintiff asserts that the Defendant has breached the fiduciary duties she owed as Trustee by failing to distribute his 50% share of Trust funds and failing to

---

[1] D. I. 1.

[2] *Id.*

pay rent for her occupancy of estate property.[3] Plaintiff requests a sale of the real property, a distribution of the proceeds, an accounting of any rental income Defendant owes and is earning from the property, a surcharge, fees and costs, and any other equitable remedy.[4]

4. The parties engaged in motion practice prior to the trial. On October 4, 2023, I denied four motions; Defendant's Motions to Dismiss, Change Venue, to Compel Discovery Responses, and Plaintiff's Motion for Summary Judgment.[5]

5. There were also multiple requests to postpone the trial. I removed the October 9, 2023, trial from the calendar,[6] rescheduling it to February 21, 2024,[7] and later to May 22, 2024.[8]

6. The Court held a one-day trial on May 22, 2024.[9]

## FINDINGS OF FACT

7. The evidence presented at trial supports the following findings of fact:[10]

---

[3] *Id.*

[4] D. I. 1 at 2.

[5] D. I. 49.

[6] D. I. 50.

[7] D. I. 51.

[8] D. I. 57.

[9] D. I. 63.

[10] D. I. 64 (Official trial transcript of May 22, 2024).

a. This Trust was created in Delaware on August 15, 2001, amended October 14, 2004, and again on July 28, 2009.[11] Decedent's Last Will and Testament ("Will"), executed on July 28, 2009, was a pour over will, devising all of Decedent's property to the substitute trustee under the Trust and appointing Defendant his executrix;[12]

b. Letters of administration for Decedent's estate ("Estate") were granted to Plaintiff on or about October 11, 2012, and then revoked, and testamentary letters were granted to Defendant on or about June 6, 2013;[13]

c. Decedent's spouse, Deborah English, was deemed a beneficiary of the Trust by order of this Court.[14]

d. In 2016, English petitioned this Court to remove Plaintiff as personal representative and accused him of several fiduciary violations and misdeeds.[15]

e. The parties eventually settled the petition, which resulted in certain properties and money transferred to English, and Defendant named the

---

[11] *In re Pepper*, 2021 WL 3055739, at *1 (Del.Ch. July 19, 2021).

[12] *Id.*

[13] *Id.*

[14] *In re Est. of Pepper,* C.A. No. 10360-ML, D.I7.

[15] D. I. 10 (Def.'s Exhibit B).

substitute trustee following Master Griffin's 2021 Order.[16] The Order noted that the Second Amended Trust appointed Defendant as substitute trustee, removing Plaintiff from that role, which he had held previously under the 2001 Trust Agreement.[17] Master Griffin held that the Trust property (not distributed to the Decedent's widow) should be "held in further trust."[18] The Will confirmed Decedent's intent for Defendant to serve as substitute trustee and that all of Decedent's property (at the time of his death) should be "added to the corpus of [the Trust]."[19]

      f.     Both Plaintiff and Defendant are the sole beneficiaries of the Trust.[20]

      g.     Approximately $36,277.22 was the remaining amount of money that was added to the Trust account.[21] Of the real property Decedent owned, only the Virginia property is left.[22] The Virginia property was previously valued, in 2012, at $70,000.[23]

---

[16] *Id.*

[17] In re Pepper, 2021 WL 3055739, at *2 (Del.Ch. July 19, 2021).

[18] *Id.*

[19] *Id.*

[20] D.I. 1 at 1 (Complaint filed by Barry E. Pepper)

[21] Pl.'s Tr. Exhibit A.

[22] Tr. 61:22-23.

[23] Tr. 62:10-15.

h.     At trial, Defendant testified that the Decedent purchased the Virginia property for the Defendant and her small children when her husband had been diagnosed with brain cancer.[24] Decedent placed the home in the Trust but created a lease agreement for the Defendant so she could enroll her children in the neighborhood school.[25] Defendant testified that there was never a requirement for her to pay rent for her occupancy of the property.[26]

i.     To date, Defendant has not distributed any payments to Plaintiff for his beneficiary share and the parties have had little contact until this matter was filed.[27]

j.     In March of 2023, Defendant sent Plaintiff copies of homeowner's insurance that she paid out of her personal account.[28] Defendant also claims that the Trust estate is potentially missing assets due to Plaintiff's prior administration of the Estate and Trust.[29]

---

[24] Tr. 75:14-19; Tr. 96:22-97:12.

[25] Tr. 77:20-24.

[26] Tr. 78:5-8.

[27] Tr. 60:1-4; Tr. 62:17-19; Tr. 74:7-18.

[28] Tr. 72:18-74:4.

[29] Tr. 115:8-13.

## CONCLUSIONS OF LAW

8.     A large portion of Plaintiff's claims relate to whether the Virginia Property is a Trust asset, so I begin my analysis with that issue. The Plaintiff contends that the Virginia property is an asset of the Trust and is therefore subject to the "one-half division" provision in subsections C(1) and D(1) of Amended Article III. Defendant claims that the Virginia property was always intended as a gift from the Decedent for her sole use and discretion and is therefore not subject to the provisions of the Trust. While I note that the Defendant has occupied and maintained the Virginia property for over two decades, there is no evidence to support that it should not be construed as a valid Trust asset. As a Trust asset, it is subject to distribution in accordance with Amended Article III of the Trust as further explained below.

9.     Plaintiff alleges Defendant has breached her fiduciary duty as trustee.[30] Delaware law authorizes the Court of Chancery to remove a trustee if the trustee commits a breach of trust, or if the court determines, "with due regard for the expressed intention of the trustor and the best interests of the beneficiaries," that there has been a substantial change in circumstances, the trustee is unfit, unwilling

---

[30] D. I. 1.

6

or unable to administer the trust properly, or the hostility between the trustee and beneficiaries threatens the efficient administration of the trust.[31]

10.     Plaintiff argues that Defendant breached her fiduciary duty by not paying rent to the Trust for her occupancy of the Virginia Property. Plaintiff refers to Master Griffin's Order where she says: "As trustee, Dunton is a fiduciary and must act impartially, keep proper accounts, furnish information, preserve Trust assets, and ensure that the Trust assets, including the Virginia Property, are properly invested and productive;"[32] and then notes in Footnote 36: "To make Trust property productive, Dunton must either sell the Virginia Property or pay fair market rent to the Trust if she continues to live on that property."[33]  Plaintiff asserts that Defendant has breached her duties as trustee because she has not made the Trust profitable and also owes rent to the Trust.  However, I reject the argument that Defendant is required under the Trust to make the Trust property profitable, as Master Griffin was citing from *Delaware Tr. Co. v. Bradford*, as opposed to the provisions of the Trust, which control.[34]

---

[31] 12 *Del.C. § 2237.*

[32] Tr.133:1-6.

[33] Tr. 133:7-11.

[34] *Delaware Tr. Co. v. Bradford*, 59 A.2d 212, 214 (1948) (Generally the courts will infer that the testator intended the life beneficiary to have the benefit of income from all property in the trust unless the terms of the trust indicate otherwise. *See* 1 Restatement of Trusts, § 241. Consequently, where the terms of the trust are silent, the courts will direct the trustee

7

11.     Article V of the Trust grants the trustee broad discretion to "hold and retain all or any property … without regard to any law or rule of court…" and "[to] invest and reinvest (or leave temporarily uninvested) any funds … real or personal, without regard to any law or rule of court prescribing or restricting investments of fiduciaries."[35] As such, Defendant is not required to make the Virginia Property profitable under the terms of the Trust and her failure to do so will not constitute a breach of her fiduciary duties.

12.     Plaintiff also argues that Defendant breached her fiduciary duty by failing to make distributions under the Trust.  Article III of the Second Amendment to the Revocable Trusts orders the remaining property to be held in Trust for both beneficiaries.[36]   Furthermore, subsections C(1) & D(1) of amended  Article III require the Trustee to pay half of the net income to both beneficiaries at least as often as "quarter-annually."[37]

13.     Subsection C(2) states that "[w]henever the Trustee determines" that Plaintiff's income is insufficient to "provide for his "health, maintenance, and support, the Trustee shall pay to him, or use for his benefit, such sums as the Trustee

to apportion the net proceeds from the sale of an unproductive asset between capital and income.).

[35] D.I. 38 (Exhibit. B, Revocable Trust Agreement).

[36] D. I. 38 (Exhibit B, Second Amendment to Revocable Trust, Art.III(C) &Art. III (D)).

[37] Id.

determines to be required for those purposes from the principal of his share of the trust."[38] Subsection D(2) provides a reciprocal provision for Defendant.[39]

14.     The Trusts' declaration of "health, maintenance and support" provides the Trustee broad application of the use of Trust assets under subsections C(2) and D(2). Unlike subsections C(1) and D(1) where the trustee is required to distribute the income of the Trust, subsections C(2) and D(2) dictate the terms for when the Trustee is able to access the principal of the Trust.

15.     When assessing whether an administrator has breached their duty of care, they are held to a standard of "ordinary care, prudence, skill and diligence[.]"[40]

16.     Here, there was no proof at trial that Defendant neglected her duty to distribute. Although subsections C(1) and D(1) of Amended Article III require the Trustee to pay out the income of the Trust to the beneficiaries, Plaintiff has not provided proof that the Trust currently has actual income.[41] Going solely off the Trust accounting prepared by Defendant, there doesn't appear to be any income

---

[38] D. I. 38 at Art. III, section C (2).

[39] D. I. 38 at Art. III, section D (2).

[40] *Del. Trust Co. v. McCune*, 80 A.2d 507, 511 (Del. Ch. May 3, 1951).

[41] When the trust was drafted, and at the time of the second amendment, the Trust contained several rental properties. Those rental properties were available when Plaintiff served as Trustee and failed to report any income. That said, some of those properties were given to Decedent's widow as a result of the Settlement Agreement and some may have been sold during Plaintiff's tenure as Trustee. Nevertheless, the Trust no longer contains that property.

9

coming into the Trust.[42] Income, in this instance is not the $36,277.22 cash principal that was remaining after the Plaintiff served as Trustee and subsequent settlement with Decedent's spouse, but rather the income would be the money that comes into the Trust as a result of the cash principal such as interest, dividends, capital gains, or rental income.[43] The existence of the $36,277.22 is not evident that it is income, rather it is a lump sum that I see as principal and subject to subsections C(2) and D(2) of Amended Article III.

17.    In accordance with the Trust, the Trustee is not required to make income or make the Trust productive. However, to the extent there is income from either interest, dividends, or capital gains on the $36,277.22, the trustee is required to pay that to the Plaintiff quarterly. If there is no income generated from the $36,277.22, no distributions are required in accordance with subsections (C)1 and D(1) because Article V of the Trust does not require the trustee to make income or make the Trust productive.

18.    Finding no requirement to distribute under subsections C(1) and D(1), I now turn to distributions according to subsections C(2) and D(2), which provides the trustee the ability to access the Trusts' principal if the trustee deems it necessary for Plaintiff's "health, maintenance and support." To the extent Plaintiff asserts a

---

[42] D.I. 62.

[43] 12 *Del.C. § 6102(4).*

10

need for a distribution of the principal (the $36,277.22 or the Virginia property)[44] for his "health, maintenance and support;" Plaintiff has failed to submit or assert any need related to this provision and no evidence thereof was presented at trial. Removal of Defendant as Trustee for failing to make distributions is hereby **DENIED**.

19. I further **DENY** the Plaintiff's request that the Court compel Defendant to provide a share of the estate proceeds to the extent Plaintiff argues that all of the proceeds from the estate are "income." Although I have denied Plaintiff's request as noted above, I **ORDER** the Defendant to provide details to the Court on whether any income from the $36,277.22 has been received by the Trust. If so, she must distribute one-half of that income, whether it is interest, dividends, or capital gains earned to the Plaintiff within 45 days of this Order with proof of compliance to be provided to the Court within 30 days of distribution. The proof of compliance should include Trust account statements and distribution amounts. If the Trust receives any further income or deposits, one-half of that amount should be distributed quarterly in accordance with the terms of the Trust.

20. The Plaintiff also argues that the Defendant neglected her duties by failing to pay taxes and insurance. A trustee has an independent duty to maintain

---

[44] See 12 *Del.C. § 6102(10).*

11

records for the trust.[45] Furthermore, a trustee has a duty to furnish information about essential facts to the beneficiaries upon request or even without a request.[46] The Defendant has provided one accounting as a result of the instant case.[47] Additionally, although Plaintiff alleged Defendant failed to pay taxes and insurance, no proof of such failure was provided. Evidence at trial showed that the Defendant used the Trust account to pay taxes and insurance.[48] The Defendant produced documentation to show that insurance and taxes on the Virginia Property are current. Records show that Plaintiff paid the real estate tax for 2017.[49] The real estate taxes for 2018 through 2022 were paid by the Trustee from the Trust.[50] This Court has no reason to conclude that the property is at risk of default or seizure for failure to pay taxes or fees. As such, it is premature to claim that she has neglected her duty to pursue claims on behalf of the estate.

---

[45] *Cf. Mennen v. Wilmington Tr. Co,* 2015 WL 1914599, at *25 (Del. Ch. Apr. 24, 2015), *aff'd sub nom. Mennen v. Fiduciary Tr. Int'l of Delaware,* 166 A.3d 102 (del. 2017).

[46] *E.g.,* McNeil v. McNeil, 798 A.2d 503, 510 (Del. 2002); *President & Fellows of Harvard Coll. V. Glancy,* 2003 WL 21026784, at *20, n. 33 (Del. Ch. Mar. 21 2003 (citing *Restatement (Second) of Trusts§ 173* (1959), "[t]rustee I sunder a duty to the beenficary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property").

[47] D.I. 62 Ex. I (Laurie Dunton's Accounting of Trust Assets).

[48] *Id.*

[49] D.I. 22 Ex. D at 33 (Documents related to tax bill).

[50] D.I. 22 Ex. D at 34-39 (Documents related to tax bill).

21. Because the Plaintiff has failed to prove any neglect of duties to this point, I find that the Defendant should not be removed for neglect of duties. Accordingly, the request for substitution of Defendant for Plaintiff as Trustee under this premise is **DENIED**.

22. Plaintiff also request that the court terminate the Trust. A court may terminate a trust where the beneficiaries consent, and after considering the objective of the settlor in establishing the Trust, the court determines that the purpose of the trust has become impossible to achieve, the administration of the Trust is extremely difficult or impractical, and/or continuing the Trust is not in the best interest of the beneficiaries.[51] Neither of these scenarios are prevalent here. The beneficiaries do not agree to dissolve the Trust, rather one beneficiary seeks to terminate the Trust in order to obtain access to the principal outside of the terms of the Trust. In addition, from the facts presented at trial, I am not convinced the purpose of the Trust is impossible to achieve.

23. It is clear that part of the Decedent's intent in creating this Trust was for the Trust to serve as a potential resource to his children for the rest of their life. This is possible under subsections C(1) and D(1) of amended Article III if the trusts produces income and under subsections C(2) and D(2) if the beneficiaries meet the requirements. Although the Trust assets are less than they were at the Decedent's

---

[51] *Lynch v. Barba*, 2018 WL 1613834, at *9 (Del. Ch. April 3, 2018).

death, that alone is not sufficient to show the Trust's purpose is frustrated. Furthermore, there is no evidence that the Decedent intended to terminate the Trust before the death of the living beneficiaries. Therefore, I **DENY** Plaintiff's request to terminate the Trust.

24. For the reasons set forth above, I find that the Plaintiff's claims should be **DENIED.**

25. The Plaintiff also seeks to shift the cost of filing and prosecuting this action to the Defendant.[52] Under Court of Chancery Rule 54(d), "costs shall be allowed as of course to the prevailing party unless the Court otherwise directs." Although I am requiring the Defendant to submit supplemental information regarding the Trust, the Plaintiff has not prevailed on his claims and, as such, costs should not be shifted.

26. This is my Final Report and exceptions may be filed under Court of Chancery Rule 144.[53]

/s/ Loren Mitchell
Magistrate in Chancery

---

[52] D. I. 1.

[53] *See* Ct. Ch. R. 144(d)(1) ("In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report.").